IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PULSEDATA, INC., | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
|   v. | )   C.A. No.   23 Civ. 3653 |
| | ) |
| JUNG HOON SON, | )   **JURY TRIAL DEMANDED** |
| | ) |
| | ) |
|        Defendant. | ) |

## PLAINTIFF PULSEDATA, INC.'S COMPLAINT

Plaintiff pulseData, Inc. ("pulseData" or "Plaintiff") alleges against Defendant Jung Hoon Son ("Dr. Jung", "Jung" or "Defendant") as follows:

## NATURE OF THE CASE

1. pulseData, a healthcare data science company focused on predictive algorithms, hired Dr. Jung in 2017. In his capacity as an employee, Dr. Jung had access to some of pulseData's most proprietary information, including technical materials, source code, data visualizations, presentations, client data, and other confidential and sensitive documents.

2. In fall 2022, Dr. Jung gave notice that he would resign from pulseData, and he signed an employment separation agreement terminating his employment.

3. Unbeknownst to pulseData, however, and in explicit breach of his employment contract with pulseData, Dr. Jung had been acting as a double agent—working simultaneously for both pulseData and one of its competitors, SmarterDx, and indeed sending confidential pulseData information to SmarterDx.

4. In fact, during Dr. Jung's final days at pulseData, pulseData employees examined

Dr. Jung's company-issued laptop and caught Dr. Jung red-handed. They found Dr. Jung logged into SmarterDx's digital workspace while at work for pulseData. A further investigation revealed that Dr. Jung moonlighted as a contractor for SmarterDx for at least 10 hours per week from October 24, 2022 to November 17, 2022 while he was simultaneously employed at pulseData and that Dr. Jung had uploaded over seventy pulseData files to SmarterDx's digital workspace, including at least one file of computer source code, in violation of his non-disclosure agreement with pulseData and applicable law.

5. Accordingly, pulseData brings this action seeking relief for Dr. Jung's breach of his non-disclosure agreement with the pulseData (Count I), and his misappropriation of pulseData's trade secrets (Counts II and III).

## PARTIES

6. Plaintiff pulseData, Inc., is, and at all times relevant hereto was, a corporation organized under the laws of Delaware with its principal place of business at 335 Madison Ave, 16th Floor, New York, NY 10017.

7. On information and belief, Defendant Jung Hoon Son is an individual domiciled in New York, NY.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiff is asserting a federal claim under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836. This Court has jurisdiction over Plaintiff's state and common law claims pursuant to 28 U.S.C. § 1367 as they form part of the same case or controversy as Plaintiff's federal claim.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district and because Defendant Jung Hoon Son is a resident of New York.

## STATEMENT OF FACTS

### PULSEDATA IS A HEALTHCARE DATA SCIENCE STARTUP WHOSE VALUE IS BASED ON ITS PROPRIETARY INTELLECTUAL PROPERTY RELATED TO ITS NOVEL ALGORITHMS AND DATA INTELLIGENCE PLATFORM

10. pulseData is a healthcare data science company, focused on predictive algorithms for Chronic Kidney Disease ("CKD") and other chronic diseases. CDC data shows that 40% of adults with late stage CKD do not know they have it. pulseData's proprietary algorithms identify individuals who are likely suffering from CKD, frequently even before a diagnosis claim is found. In addition, pulseData's algorithms predict who is headed towards kidney failure, enabling early and proactive intervention. Its customers include Medicare Advantage plans, commercial health plans, self-insured employers, risk-bearing health systems, Accountable Care Organizations, and providers participating in value-based care.

11. pulseData has raised $16.5 million in series A funding and has a multi-million dollar valuation, derived, at least in part, from its revolutionary data intelligence platform for predicting the progression of kidney disease. This data intelligence platform cost pulseData millions of dollars to design and develop and is an essential trade secret of the company.

### PULSEDATA HIRES DR. JUNG AND HE SIGNS A NON-DISCLOSURE AND INVENTION ASSIGNMENT AGREEMENT

12. On June 2, 2017, pulseData hired Dr. Jung as a Senior Bioinformaticist, and, on February 8, 2020, Dr. Jung was promoted to Director of Informatics. His role included developing and identifying clinical and population health care pathways, developing data pipeline systems, interpreting and normalizing large data sets from client health care systems, and integrating pulseData software into enterprise data warehouses, CRM systems, and reporting tools. Dr. Jung had access to some of pulseData's most proprietary information, including technical materials, source code, data visualizations, presentations, client data, and other confidential and sensitive

documents.

13. Prior to starting employment at pulseData, Dr. Jung signed an "Employee Non-Disclosure and Invention Assignment Agreement" (the "Non-Disclosure Agreement"), attached herein as Exhibit 1.

14. In the Non-Disclosure Agreement, Dr. Jung acknowledged that as part of his role he would have access to confidential and proprietary information, including "technical data, trade secrets or know-how, including, but not limited to, research, product plans, … customer lists and customers, … software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information." He also acknowledged several obligations he had regarding this information.

15. *First*, Dr. Jung agreed not to use or disclose, during or after termination, "any of [pulseData's] Confidential Information except as authorized by [pulseData's] management … , and then only pursuant to a written non-disclosure agreement that sufficiently protects the Confidential Information."

16. *Second*, Dr. Jung agreed that, upon termination of his employment, he would "deliver to [pulseData] … any and all devices, records, data, notes, reports, proposals, lists, correspondence (including emails), specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by [Dr. Jung] pursuant to [Dr. Jung's] employment with [pulseData] or otherwise belonging to [pulseData]."

17. *Third*, Dr. Jung agreed to "not engage in any other employment, occupation or consulting related to the business in which [pulseData] is now involved or becomes involved during the term of [his] employment."

4

18. *Fourth*, Dr. Jung agreed to "not, either directly or indirectly, interfere with [pulseData's] customer relationships" during the course of his employment and for one year following his termination.

19. Having signed the Non-Disclosure Agreement, Dr. Jung commenced his employment with pulseData on July 5, 2017.

### UNBEKNOWNST TO PULSEDATA, DR. JUNG BEGINS MOONLIGHTING FOR SMARTERDX AND MISAPPROPRIATING CONFIDENTIAL AND SENSITIVE PULSEDATA INFORMATION

20. On October 27, 2022, Dr. Jung gave notice that he would resign from pulseData.

21. On November 3, 2022, Dr. Jung signed an employment separation agreement ("Separation Agreement") terminating his employment as of November 17, 2022.

22. Dr. Jung's last day of work at pulseData was on November 14, 2022. At his exit interview, pulseData took possession of his company laptop. When pulseData opened the laptop, it observed that Dr. Jung was logged into the Slack workspace—an instant messaging program for professionals—of SmarterDx.

23. SmarterDx is a competing company in pulseData's space that uses an AI tool to perform second level reviews of patient charts to generate additional revenue for hospitals, focusing on Clinical Documentation Improvement and Medical Coding for acute care patients.

24. The revelation that Dr. Jung was logged into SmarterDx's Slack workspace raised concerns that Dr. Jung had shared pulseData confidential information and trade secrets with SmarterDx. Indeed, after conducting further review, pulseData discovered that Dr. Jung uploaded at least 77 files to SmarterDx's Slack workspace, including at least one file of pulseData computer code.

25. Dr. Jung's disclosure of pulseData's confidential information to a competitor was

not authorized by pulseData.

26. pulseData also discovered that Dr. Jung was using a SmarterDx email address as early as October 23, 2022.

27. On information and belief, Dr. Jung had moonlighted as a contractor for SmarterDx for at least 10 hours per week from October 24, 2022 to November 17, 2022 while he was simultaneously employed at pulseData.

**WHEN CONFRONTED, DR. JUNG IS NOT FORTHCOMING**

28. Upon discovering and learning of Dr. Jung's misconduct, pulseData diligently took steps to investigate and protect its confidential and sensitive information, including hiring Latham & Watkins LLP ("Latham") as counsel.

29. Two days after taking possession of Dr. Jung's company laptop, Latham sent Dr. Jung a cease and desist letter on November 16, 2022, asking Dr Jung to, among other things, "[p]rovide a detailed, written account of what pulseData Confidential Information, [he] accessed and/or downloaded prior to or since [he] signed the Employment Separation Agreement—other than in connection with your employment at pulseData—and what [he] did with that information, including details on any devices or accounts to which you transferred the information."

30. Dr. Jung responded by email the next day (1) stating that he would "comply fully" and (2) providing a "Documentation of Materials Shared" with SmarterDx. Dr. Jung also retained outside counsel.

31. Since that date, pulseData's investigation has revealed that Dr. Jung's representations in his "Documentation of Materials Shared" were false and misleading.

32. In his "Documentation of Materials Shared," Dr. Jung represented that "[t]here is no pulseData codebase downloaded anywhere that [he] ha[s] access to or SmarterDx employees."

6

In response to pulseData's question about which of its confidential information and trade secrets Dr. Jung had shared, with whom, and how, Dr. Jung listed only "screenshots of care summaries" and "sample sets of routinely available healthcare data," along with "non-pulseData visualization work."

33. pulseData's investigation revealed that, just three days prior, Dr. Jung had uploaded pulseData code directly into SmarterDx's Slack workspace. He also used pulseData's code to create data visualizations for SmarterDx.

34. In his "Documentation of Materials Shared," Dr. Jung also said that he had shared a limited amount of pulseData's confidential information with only Josh Geleris, SmarterDx's co-founder and Head of Product.

35. pulseData's investigation revealed, however, that Dr. Jung shared a significant volume of information with a wider group of SmarterDx executives and officers, including its CEO Michael Gao.

36. Additionally, pulseData's investigation revealed that Dr. Jung had helped SmarterDx revamp its product based on pulseData's source code, and assisted SmarterDx with a pitch to a prospective pulseData customer using pulseData's own trade secrets.

37. Dr. Jung also attempted to cover his tracks and delete the records of his misappropriation, including multiple Slack messages and files. His conduct was both willful and malicious.

38. On March 17, 2023, Latham sent Dr. Jung's counsel a demand letter.

39. Dr. Jung's counsel requested several extensions of time to respond, before finally informing Latham that her firm was no longer retained by Dr. Jung. She did not substantively respond to the demand letter.

40.     Dr. Jung has also continued to ignore all attempts to contact him.

**PULSEDATA HAS BEEN, AND WILL BE, SEVERELY HARMED BY DR. JUNG'S MISAPPROPRIATION OF PULSEDATA'S CONFIDENTIAL TRADE SECRET INFORMATION**

41.     The theft of information by Dr. Jung has caused, and will continue to cause irreparable harm to pulseData.

42.     The information Dr. Jung stole and misappropriated concerned several aspects of pulseData's trade secrets. Some of the information relates to pulseData's predictive models. In particular, it concerns the specific algorithmic approach or methodology used to develop pulseData's predictive models, the specific parameters used to train and fine-tune the algorithm, the specific hardware or cloud infrastructure used to train and deploy the predictive algorithm, and specific business processes or workflows used to integrate the predictive algorithm into healthcare operations. Other information concerns pulseData's proprietary model explainability tools, data visualization and care summary which are used to explain predictive analytics results to actual users. Still other information concerns pulseData's unique datasets, such as patient data from a particular geographic region or electronic health records from a specific hospital network, that provide valuable insights and features for the algorithm.

43.     The confidential trade secret information Dr. Jung misappropriated is the core basis for pulseData's multi-million dollar valuation.

44.     Dr. Jung uploaded at least 77 files to SmarterDx's Slack workspace, including at least one file of computer code.

45.     Dr. Jung uploaded pulseData's confidential information and trade secrets to a competitor's work space and databases, and then assisted that competitor with revamping its product using and based on pulseData's trade secrets, and with customer pitches using pulseData's own trade secrets.

46. It is critical to pulseData's success as a company that these misappropriated files be retrieved and destroyed. As long as these files are out of pulseData's control, it is possible that they could be leaked onto the Internet, held for ransom, or provided to even more competitors. Any competitor with access to these files could obtain valuable proprietary technology worth years of research and millions of dollars of development costs.

47. The data visualizations and source code are important trade secrets containing information critical to business development of both existing and new clients. They represent a substantial investment of time and money by pulseData.

### PULSEDATA TAKES DILIGENT STEPS TO PROTECT THE TRADE SECRETS DR. JUNG MISAPPROPRIATED

48. pulseData goes to great lengths to protect its confidential and trade secret information. pulseData maintains the information in secure databases to which only pulseData employees and executives have access.

49. To protect its proprietary customer, prospective customer, and product and services information, pulseData requires its employees sign an Employee Non-Disclosure and Invention Assignment Agreement. This Agreement prohibits employees from using or disclosing to anyone, any of pulseData's confidential and/or proprietary information without prior written authorization.

50. Additionally, pulseData stores its confidential and/or proprietary information on platforms in which access is secured with enforced multi-factor authentication (i.e., before accessing the information, a user must provide multiple ways of authenticating their identity (for example, a password and an approval pushed to the user's registered device)). Further, pulseData utilizes role-based access control so users only have access to the services and information necessary to fulfill their job functions.

## Count I

### Breach by Dr. Jung of the Non-Disclosure Agreement

51. pulseData incorporates by reference the foregoing paragraphs.

52. There exists a valid and enforceable Non-Disclosure Agreement between pulseData and Dr. Jung.

53. pulseData has performed its obligations under the Non-Disclosure Agreement.

54. Dr. Jung breached his contractual obligations to pulseData by wrongfully misappropriating confidential information and trade secrets from pulseData, sharing them with a competitor, and using the confidential information and trade secrets to create work product for SmarterDx. Dr. Jung further breached his contractual obligations to pulseData by wrongfully engaging in employment with a pulseData rival during the term of his employment with pulseData.

55. pulseData has suffered and will continue to suffer irreparable harm as a result of this breach and threatened future breaches. pulseData is threatened with the loss of the value of its trade secrets and confidential information. pulseData has also suffered monetary injury as a result of Dr. Jung's breach, in an amount to be proven at trial.

## Count II

### Violation of the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836)

56. pulseData incorporates by reference the foregoing paragraphs.

57. At all times relevant hereto, pulseData has owned and possessed files and documents constituting confidential and trade secret information, as alleged above.

58. pulseData took reasonable steps to protect and maintain the secrecy of its trade secrets, including by requiring its employees—including Dr. Jung—to agree to keep such information confidential in their employment and termination agreements, and storing trade secret

information in an encrypted server with limited access.

59. pulseData's misappropriated confidential and trade secret information related to products and services used and intended for use in interstate or foreign commerce. pulseData's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

60. Dr. Jung has, through improper means—including, but not limited to, breaching confidentiality covenants he executed and sharing confidential trade secret information with SmarterDx—misappropriated pulseData's trade secrets.

61. By taking pulseData's trade secrets for his own use and benefit, Dr. Jung intentionally and willfully converted pulseData's trade secrets for his own economic benefit, knowing that such action would cause injury to pulseData.

62. Dr. Jung knowingly stole and/or misappropriated pulseData's trade secrets when he intentionally uploaded at least 77 files, including at least one source code file, to SmarterDx's Slack workspace and used pulseData trade secrets to seek gainful employment with SmarterDx while simultaneously employed at pulseData.

63. As a direct and proximate result of Defendant Dr. Jung's conduct, pulseData has suffered and, if Defendant's conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages. pulseData's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief. pulseData has not yet been able to fully quantify the monetary damage Dr. Jung has caused pulseData. pulseData also seeks disgorgement of the ill-gotten profits Dr. Jung has generated from pulseData's trade secrets, including but not limited to any payments SmarterDx paid to Dr. Jung for his consulting work.

64. Defendant Dr. Jung's misappropriation of pulseData's trade secrets was willful and malicious, and is entitled to an award of exemplary damages and attorney's fees pursuant to 18 U.S.C. § 1836(b)(3)(C) and (D).

65. Monetary damages cannot fully compensate pulseData for the ongoing injuries Dr. Jung is causing to pulseData, and pulseData is entitled to injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A). pulseData seeks a preliminary injunction and/or permanent injunction against Dr. Jung which: (a) prohibits Dr. Jung from directly or indirectly utilizing pulseData's confidential and proprietary information and trade secrets; (b) prohibits Dr. Jung from further disclosing pulseData's confidential and proprietary information and trade secrets to third parties; (c) prohibits Dr. Jung from retaining any pulseData confidential and proprietary information and trade secrets he currently has in his possession; (d) compels Dr. Jung to refrain from working in the field of healthcare/medical data analytics and patient data visualization for two years; and/or (e) compels Dr. Jung to disclose to pulseData the identity of all other persons or entities to whom Dr. Jung has disclosed pulseData's confidential and proprietary information and trade secrets and/or to whom Dr. Jung has transferred such property.

**Count III**

**<u>Misappropriation of Trade Secrets – Violations Under New York Common Law</u>**

66. pulseData incorporates by reference the foregoing paragraphs.

67. At all times relevant hereto, pulseData owned and possessed files and documents constituting confidential and trade secret information, as alleged above.

68. pulseData took reasonable steps to protect and maintain the secrecy of its trade secrets, including requiring its employees—including Dr. Jung—to agree to keep such information confidential in their employment and termination agreements, and storing trade secret information

in an encrypted server with limited access.

69. pulseData's misappropriated confidential and trade secret information relates to products and services used and intended for use in interstate or foreign commerce. pulseData's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

70. Dr. Jung has, through improper means—including, but not limited to, breaching confidentiality covenants he executed and sharing confidential trade secret information with SmarterDx—misappropriated pulseData's trade secrets.

71. By taking pulseData's trade secrets for their own use and benefit, Dr. Jung intentionally and willfully converted pulseData's trade secrets for his own economic benefit, knowing that such action would cause injury to pulseData.

72. Dr. Jung knowingly stole and/or misappropriated pulseData's trade secrets when he intentionally uploaded at least 77 files, including at least one source code file, to SmarterDx's Slack workspace and used pulseData trade secrets to seek gainful employment with SmarterDx while simultaneously employed at pulseData.

73. As a direct and proximate result of Defendant Dr. Jung's conduct, pulseData has suffered and, if Defendant's conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages. pulseData's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief. pulseData has not yet been able to fully quantify the monetary damage Dr. Jung has caused pulseData. pulseData also seeks disgorgement of the ill-gotten profits Dr. Jung has generated from pulseData's trade secrets, including but not limited to any payments SmarterDx paid to Dr. Jung for his consulting work.

74. Defendant Dr. Jung's misappropriation of pulseData's trade secrets was willful and malicious. As a result of Dr. Jung's conduct, and to deter Dr. Jung from engaging in similar such conduct, pulseData is entitled to exemplary damages and an award of attorney's fees.

75. Monetary damages cannot fully compensate pulseData for the ongoing injuries Dr. Jung is causing to pulseData, and pulseData is entitled to injunctive relief. pulseData seeks a preliminary injunction and/or permanent injunction against Dr. Jung which: (a) prohibits Dr. Jung from directly or indirectly utilizing pulseData's confidential and proprietary information and trade secrets; (b) prohibits Dr. Jung from further disclosing pulseData's confidential and proprietary information and trade secrets to third parties; (c) prohibits Dr. Jung from retaining any pulseData confidential and proprietary information and trade secrets he currently has in his possession; (d) compels Dr. Jung to refrain from working in the field of healthcare/medical data analytics and patient data visualization for two years; and/or (e) compels Dr. Jung to disclose to pulseData the identity of all other persons or entities to whom Dr. Jung has disclosed pulseData's confidential and proprietary information and trade secrets and/or to whom Dr. Jung has transferred such property.

## PRAYER FOR RELIEF

**WHEREFORE**, pulseData prays for the following relief:

A. Entry of a preliminary injunction or temporary restraining order prohibiting Defendant Dr. Jung from (1) disclosing and/or using any of pulseData's confidential and/or trade secret information; and (2) communicating with any parties to whom he has disclosed any of pulseData's confidential and/or trade secret information, and a permanent injunction prohibiting him from those same activities;

B. Entry of a preliminary injunction or temporary restraining order requiring that Dr. Jung return to Plaintiff all originals and all copies of pulseData trade secrets, confidential

information, proprietary information, or other property that may exist, in any form, that are in his possession, custody or control.

        C.        Entry of a preliminary injunction or temporary restraining order requiring that Dr. Jung submit his devices, cloud storage accounts, and other means of data storage and transfer to a third-party forensic data removal firm, which will confirm that all originals and copies of all pulseData trade secrets, confidential information, proprietary information, or other property have been completely removed.

        D.        Entry of a preliminary injunction or temporary restraining order requiring that Dr. Jung explain any use or disclosure of pulseData's trade secrets, confidential information, or proprietary information, in sufficient detail to enable pulseData to track down and recover all misappropriated information, including but not limited to misappropriated information at SmarterDx.

        E.        Entry of an award of damages to pulseData, including actual damages and any profits Dr. Jung has achieved as a result of this misappropriation;

        F.        Double damages as a result of the willful and malicious conduct of Dr. Jung;

        G.        Pre-judgment interest for any damages awarded;

        H.        The costs of suit occurred herein;

        I.        pulseData's attorney fees reasonably expended in this action; and

        J.        Such other and further relief as the Court deems just and appropriate under the circumstances.

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), pulseData demands a trial by jury on

all of the claims so triable.

| | |
|---|---|
| Dated: May 1, 2023<br>New York, New York | LATHAM & WATKINS LLP<br><br>By: */s/ Matthew S. Salerno*<br>Matthew S. Salerno<br>1271 Avenue of the Americas<br>New York, New York 10020-1401<br>Telephone: (212) 906-1200<br>matthew.salerno@lw.com<br><br>*Attorneys for Plaintiff pulseData, Inc.* |