# EXHIBIT 1

## PULSEDATA INC.

### EMPLOYEE NON-DISCLOSURE AND INVENTION ASSIGNMENT AGREEMENT

On July 5, 2017 (the "Employment Commencement Date") I will become an employee of pulseData Inc., a Delaware corporation (collectively with its subsidiaries, affiliates, successors or assigns, the "Company"). As a condition of my employment with the Company and in consideration of my receipt of new and additional confidential information and my receipt of the compensation now and hereafter paid to me by Company, I hereby agree to the following terms and conditions of this Employee Non-Disclosure and Invention Assignment Agreement (the "Agreement") which shall be effective as of the date set forth in the signature block ("Effective Date"):

1. *At-Will Employment.* I UNDERSTAND AND ACKNOWLEDGE THAT MY EMPLOYMENT WITH THE COMPANY IS FOR AN UNSPECIFIED DURATION AND CONSTITUTES "AT-WILL" EMPLOYMENT. I ALSO UNDERSTAND THAT ANY REPRESENTATION TO THE CONTRARY IS UNAUTHORIZED AND NOT VALID UNLESS OBTAINED IN WRITING AND SIGNED BY THE COMPANY'S CHIEF EXECUTIVE OFFICER OR PRESIDENT. I ACKNOWLEDGE THAT THIS EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT GOOD CAUSE OR FOR ANY OR NO CAUSE, AT THE OPTION EITHER OF THE COMPANY OR MYSELF, WITH OR WITHOUT NOTICE.

2. *Confidential Information.*

(a) *Company Information.* I agree at all times during the term of my employment and thereafter to hold in strictest confidence, and not to use, except for the benefit of the Company, any of the Company's Confidential Information; or disclose to any person, firm or corporation any of the Company's Confidential Information except as authorized by the Company's management in connection with my authorized duties on behalf of the Company, and then only pursuant to a written non-disclosure agreement that sufficiently protects the Confidential Information. I understand that "Confidential Information" means any information that relates to the Company's actual or anticipated business or research and development, technical data, trade secrets or know-how, including, but not limited to, research, product plans or other information regarding the Company's products or services and markets therefor, customer lists and customers (including, but not limited to, the Company's customers on whom I will call or with whom I will become acquainted during the term of my employment), software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information. I further understand that Confidential Information (A) includes the foregoing information even if disclosed to me prior to the Effective Date, and (B) does not include any of the foregoing items that is or becomes publicly known through no wrongful act or omission of mine or of others who were under confidentiality obligations as to the item or items involved.

(b) *Former Employer Information.* I agree that I will not, during my employment with the Company, improperly use or disclose any confidential or proprietary information or trade secrets of any former employer or other person or entity and that I will not bring onto the premises of the Company any confidential or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

(c) *Third Party Information.* I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information, subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

(d) *Provision of Confidential Information.* The Company agrees to provide me with certain Confidential Information following the Effective Date regarding the Company that will enable me to optimize the performance of my duties to the Company. I agree that the Company will have no obligation to make available to me any of its Confidential Information after the termination of my employment.

3. *Inventions.*

(a) *Assignment of Inventions.* I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registrable under copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the employ of the Company (collectively, "Inventions"), except as provided in Section 3(f) below. I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and which are protectible by copyright are "works made for hire" as that term is defined in the United States Copyright Act. I understand and agree that the decision whether or not to commercialize or market any Invention is within the Company's sole discretion and for the Company's sole benefit and that no royalty will be due to me as a result of the Company's efforts to commercialize or market any such Invention.

(b) *Inventions Retained and Licensed.* I have attached hereto as Exhibit A a list describing all inventions, original works of authorship, developments, improvements and trade secrets that were made by me prior to my employment with the Company, relate to the Company's proposed business, products or research and development, and are owned in whole or in part by me, ("Prior Inventions"); or, if no such list is attached or if Exhibit A is unsigned, I represent that there are no such Prior Inventions. I agree that I will not incorporate, or permit to be incorporated, any Prior Invention into a Company product, process or service without the Company's prior written consent. Nevertheless, if, in the course of my employment with the Company, I incorporate into a Company product, process or service a Prior Invention, I hereby grant to the Company a nonexclusive, royalty-free, fully paid-up, irrevocable, perpetual, transferable, sublicensable, worldwide license to reproduce, make derivative works of, distribute, perform, display, import, make, have made, modify, use, sell, offer to sell, and exploit in any other way such Prior Invention as part of or in connection with such product, process or service, and to practice any method related thereto.

(c) *Inventions Assigned to the United States.* I agree to assign to the United States government all my right, title, and interest in and to any and all Inventions whenever such full title is required to be in the United States by a contract between the Company and the United States or any of its agencies.

(d) *Maintenance of Records.* I agree to keep and maintain adequate and current written records of all Inventions during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings and any other format that may be specified by the Company. The records will be available to the Company and shall remain the Company's sole property at all times.

(e) *Patent and Copyright Registrations.* I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in any Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including, but not limited to, the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments that the Company deems necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement. If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering any Inventions or original works of authorship assigned to the Company as above, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by me.

(f) *Exception to Assignments.* I understand that the provisions of this Agreement requiring assignment of Inventions to the Company do not apply to any Invention that I have developed entirely on my own time without using the Company's equipment, supplies, facilities, trade secret information or Confidential Information (an "Other Invention") except for those Other Inventions that either (i) relate at the time of conception or reduction to practice of such Other Invention to the Company's business, or actual or demonstrably anticipated research or development of the Company or (ii) result from any

- 2 -

work that I performed for the Company. I will advise the Company promptly in writing of any Invention that I believe constitutes an Other Invention and is not otherwise disclosed on Exhibit A. I agree that I will not incorporate, or permit to be incorporated, any Other Invention owned by me or in which I have an interest into a Company product, process or service without the Company's prior written consent. Notwithstanding the foregoing sentence, if, in the course of my employment with the Company, I incorporate into a Company product, process or service an Other Invention owned by me or in which I have an interest, I hereby grant to the Company a nonexclusive, royalty-free, fully paid-up, irrevocable, perpetual, transferable, sublicensable, worldwide license to reproduce, make derivative works of, distribute, perform, display, import, make, have made, modify, use, sell, offer to sell, and exploit in any other way such Other Invention as part of or in connection with such product, process or service, and to practice any method related thereto.

4.   *Conflicting Employment.* Except in connection with my interests or involvements with the companies listed on Schedule A attached hereto, I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation or consulting related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities that conflict with my obligations to the Company.

5.   *Solicitation of Employees.* I agree that for a period of one (1) year immediately following the termination of my relationship with the Company for any reason, whether with or without cause, at the option either of the Company or myself, with or without notice, I will not, either directly or indirectly, solicit, induce, recruit or encourage any of the Company's employees to leave their employment, or hire or take away such employees, or attempt to solicit, induce, recruit, encourage, hire or take away employees of the Company, either for myself or for any other person or entity.

6.   *Interference.* I agree that during the course of my employment and for a period of one (1) year immediately following the termination of my relationship with the Company for any reason, whether with or without cause, at the option either of the Company or myself, with or without notice, I will not, either directly or indirectly, interfere with the Company's customer relationships.

7.   *Covenant Not to Compete.*

(a)   I agree that during the course of my employment and for a period of (a) one (1) year immediately following the termination of my relationship with the Company for Cause (as defined below), or (b) one (1) year immediately following the termination of my relationship with the Company as a result of my resignation, or (c) in the event the Company pays me severance in connection with a termination of my employment by the Company without Cause, the period of time for which such severance, in the aggregate, would pay my gross monthly pre-termination compensation (but in no event longer than one (1) year following the termination of my relationship with the Company), I will not, either directly or indirectly, (i) serve as an advisor, agent, consultant, director, employee, officer, partner, proprietor or otherwise of, (ii) have any ownership interest in (except for passive ownership of one percent (1%) or less of any entity whose securities have been registered under the Securities Act of 1933, as amended, or Section 12 of the Securities Exchange Act of 1934, as amended), or (iii) participate in the organization, financing, operation, management or control of, any business in competition with the Company's business as conducted by the Company at any time during the course of my employment with the Company. For the purposes of the foregoing sentence, no business shall be deemed to be in competition with the Company's business solely by virtue of the fact that such business provides products or services to direct or indirect competitors of the Company so long as such business does not directly compete with the Company. The foregoing covenant shall cover my activities in every part of the Territory. "Territory" shall mean (i) all states of the United States of America and (ii) all other countries of the world; provided that, with respect to clause (ii), the Company maintains non-trivial operations, facilities, or customers in such geographic area prior to the date of the termination of my relationship with the Company. Notwithstanding anything to the contrary herein, my interests or involvements in the companies listed on Schedule A attached hereto shall be deemed not to violate this Section 7.

For the purposes of this Agreement, "Cause" means (a) my commission of any act of dishonesty, embezzlement, theft or fraud with respect to the Company; (b) my indictment, plea of *nolo contendere* or conviction, of any felony or of any crime involving dishonesty; (c) my material breach of my duties to the Company, including repeated unsatisfactory performance of job duties, as determined by the Board of Directors of the Company; (d) my material breach of any written Company policy; or (e) my misconduct which in the good faith and reasonable determination of the Board of Directors of the Company, is materially detrimental to the Company, its business or its reputation.

(b)   I acknowledge that my fulfillment of the obligations contained in this Agreement, including, but not limited to, my obligation neither to use, except for the benefit of the Company, or to disclose the Company's Confidential

- 3 -

Information and my obligation not to compete contained in subsection (a) above is necessary to protect the Company's Confidential Information and to preserve the Company's value and goodwill. I further acknowledge the time, geographic and scope limitations of my obligations under subsection (a) above are reasonable, especially in light of the Company's desire to protect its Confidential Information, and that I will not be precluded from gainful employment if I am obligated not to compete with the Company during the period and within the Territory as described above.

(c)   The covenants contained in subsection (a) above shall be construed as a series of separate covenants, one for each city, county and state of any geographic area in the Territory. Except for geographic coverage, each such separate covenant shall be deemed identical in terms to the covenant contained in subsection (a) above. If, in any judicial proceeding, a court refuses to enforce any of such separate covenants (or any part thereof), then such unenforceable covenant (or such part) shall be eliminated from this Agreement to the extent necessary to permit the remaining separate covenants (or portions thereof) to be enforced. In the event the provisions of subsection (a) above are deemed to exceed the time, geographic or scope limitations permitted by applicable law, then such provisions shall be reformed to the maximum time, geographic or scope limitations, as the case may be, then permitted by such law.

8.   *Returning Company Documents*. I agree that, at the time of leaving the employ of the Company, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence (including emails), specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors or assigns, including, but not limited to, those records maintained pursuant to Section 3(d). In the event of the termination of my employment, I agree to sign and deliver the "Termination Certification" attached hereto as Exhibit B.

9.   *Further Assurances; No Conflict*. I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. I represent that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith.

10.   *Notification to New Employer*. In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my rights and obligations under this Agreement.

11.   *Arbitration and Equitable Relief*.

(a)   *Arbitration*. Except as provided in subsection (b) below, I agree that any dispute, claim or controversy concerning my employment or the termination of my employment or any dispute, claim or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in New York, New York in accordance with the rules then in effect of the American Arbitration Association. The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. To the extent permitted by law, the Company shall pay the administrative fees associated with the arbitration, except for the first $300.00 in administrative fees for any arbitration that is initiated by me, and each of us shall separately pay our counsel fees and expenses.

(b)   *Equitable Remedies*. I agree that it would be impossible or inadequate to measure and calculate the Company's damages from my breach of Sections 2, 3, 4, 5, 6 and 7 of this Agreement. Accordingly, I agree that if I breach any such Section, the Company will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of this Agreement. I further agree that no bond or other security shall be required in obtaining such equitable relief and I hereby consent to the issuance of such injunction and to the ordering of specific performance.

12.   *General Provisions*.

(a)   *Governing Law; Consent to Personal Jurisdiction*. THIS AGREEMENT WILL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD FOR CONFLICTS OF LAWS PRINCIPLES. SUBJECT TO THE ARBITRATION PROVISION IN SECTION 11(a), I HEREBY EXPRESSLY CONSENT TO THE

- 4 -

PERSONAL JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN NEW YORK, NEW YORK FOR ANY LAWSUIT FILED THERE AGAINST ME BY THE COMPANY CONCERNING MY EMPLOYMENT OR THE TERMINATION OF MY EMPLOYMENT OR ARISING FROM OR RELATING TO THIS AGREEMENT.

(b) *Entire Agreement.* This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all prior discussions or representations between us, including, but not limited to, any representations made during my interview(s) or relocation negotiations, whether written or oral. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the Company's Chief Executive Officer or President and me. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

(c) *Severability.* If one or more of the provisions in this Agreement are deemed void by law then the remaining provisions will continue in full force and effect.

(d) *Successors and Assigns.* This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors and its assigns. The Company may assign this Agreement in its discretion, including all licenses granted to the Company hereunder.

(e) *Construction.* The language used in this Agreement will be deemed to be the language chosen by the parties to express their mutual intent and no rules of strict construction will be applied against either party.

(f) *Counterparts.* This Agreement may be executed in any number of counterparts, each of which shall be enforceable, and all of which together shall constitute one agreement.

13. I acknowledge and agree to each of the following items:

(a) I am executing this Agreement voluntarily and without any duress or undue influence by the Company or anyone else; and

(b) I have carefully read this Agreement. I have asked any questions needed for me to understand the terms, consequences and binding effect of this Agreement and fully understand them; and

(c) I sought the advice of an attorney of my choice if I wanted to before signing this Agreement.

*[Remainder of this page intentionally left blank]*

IN WITNESS WHEREOF, the parties have executed this Agreement on the day, month and year first set forth below, to be effective as of the Effective Date.

Date: Jun 2, 2017 _____.

**PULSEDATA INC.**                                    **"Employee"**

*Hai Po Sun*
By: Hai Po Sun (Jun 2, 2017)

*Jung Hoon Son*
By: Jung Hoon Son (Jun 2, 2017)

Name: Hai Po Sun

Name: Jung Hoon Son

Title: CTO

**PULSEDATA INC.**
**EMPLOYEE NON-DISCLOSURE AND INVENTION ASSIGNMENT AGREEMENT SIGNATURE PAGE**

## SCHEDULE A

### LIST OF INTERESTS/INVOLVEMENTS WITH OTHER COMPANIES

(if no relevant Interests/Involvements to list, then "N/A")

N/A

# EXHIBIT A

## LIST OF PRIOR INVENTIONS

(if no relevant Prior Inventions to list, then "N/A")

| Title | Date | Identifying Number or Brief Description |
|-------|------|------------------------------------------|

N/A

Signature of Employee: *Hai Po Sun*  
<sub>Hai Po Sun (Jun 2, 2017)</sub>

Print Name of Employee: Hai Po Sun

Date: Jun 2, 2017

## EXHIBIT B

### PULSEDATA INC.

### TERMINATION CERTIFICATION

I certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence (including emails), specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items belonging to pulseData Inc., its subsidiaries, affiliates, successors or assigns (together, the "Company").

I further certify that I have complied with all the terms of the Company's Employee Non-Disclosure and Invention Assignment Agreement signed by me, including, but not limited to, the reporting of any Inventions or Other Inventions (as such terms are defined therein).

I confirm my agreements contained in Section 2 (Confidential Information), Section 3 (Inventions), Section 5 (Solicitation of Employees), Section 6 (Interference), and Section 7 (Covenant Not to Compete) of the Employee Non-Disclosure and Invention Assignment Agreement.

Date: _____

_____

Employee's Signature

_____

Print Name

refer to a termination certificate provision it is placed into with upon termination

# 20170602 pulseDataOffer JungHoonSon

Adobe Sign Document History                 06/02/2017

| | |
|---|---|
| Created: | 06/02/2017 |
| By: | Theodore Cha (teddy@pulsedata.io) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA7V4Zh2OauVm-nfAHkHoZWpXMz1HdkEXo |

## "20170602 pulseDataOffer JungHoonSon" History

- Document created by Theodore Cha (teddy@pulsedata.io)
  06/02/2017 - 5:48:50 AM PDT- IP address: 184.74.241.202

- Document emailed to Hai Po Sun (haipo@pulsedata.io) for signature
  06/02/2017 - 5:51:05 AM PDT

- Document viewed by Hai Po Sun (haipo@pulsedata.io)
  06/02/2017 - 6:30:12 AM PDT- IP address: 66.249.88.139

- Document e-signed by Hai Po Sun (haipo@pulsedata.io)
  Signature Date: 06/02/2017 - 6:47:50 AM PDT - Time Source: server- IP address: 184.74.241.202

- Document emailed to Jung Hoon Son (jhs2182@cumc.columbia.edu) for signature
  06/02/2017 - 6:47:50 AM PDT

- Document viewed by Jung Hoon Son (jhs2182@cumc.columbia.edu)
  06/02/2017 - 7:20:40 AM PDT- IP address: 156.111.111.218

- Document e-signed by Jung Hoon Son (jhs2182@cumc.columbia.edu)
  Signature Date: 06/02/2017 - 7:22:51 AM PDT - Time Source: server- IP address: 156.111.111.218

- Signed document emailed to Theodore Cha (teddy@pulsedata.io), Jung Hoon Son (jhs2182@cumc.columbia.edu) and Hai Po Sun (haipo@pulsedata.io)
  06/02/2017 - 7:22:51 AM PDT

Adobe Sign