# EXHIBIT B

**pulseData, Inc.**

October 27, 2022

Jung Hoon Son
78 Riverside Drive 3B
New York, NY 10024

Re:     <u>Employment Separation</u>

Dear Jung:

This letter confirms the terms of the offer made to you by pulseData Inc. (the "<u>Company</u>") regarding the separation of your employment, effective as of November 17, 2022 (the "<u>Separation Date</u>").  If you sign and return this letter to me on or before October 27, 2022, and allow it to become effective in accordance with the terms of Section 6(c), it shall become a binding agreement between you and the Company, and you will receive the separation benefits described herein.  If you do not timely sign and return it, or if you revoke it, you will receive no payments or benefits from the Company after the Separation Date.

Your employment with the Company will be terminated effective as of the Separation Date.  The Company wishes to provide certain severance benefits to you, to assist you while you are looking for other employment, and you wish to receive such severance benefits.  Therefore, for the receipt of good and adequate consideration, you and the Company agree as follows.

1.      <u>Return of Company Property.</u>  You have returned all property of the Company including, without limitation, confidential information or copies of such information, or other documents or materials, equipment, or other property belonging to the Company including, but not limited to, keys, badges, computer hardware and software, files, manuals, training materials, records, policies, code, database information and lists, employee information, client information, equipment and supplies, and all other documents or information that belong to the Company or that reflect its Confidential Information or that of its employees or clients, in any form, including electronically stored information, including all copies thereof. By signing this Agreement, you represents and warrants that all such property has been returned and all copies thereof have been permanently removed from your personal devices, possession and control.

2.      <u>Accrued Wages and Expenses.</u>  You acknowledge receipt, on the Separation Date, of a payment in the amount equal to all earned wages owed to you through the Separation Date, including accrued, unused vacation or paid time off, base pay, commissions, bonuses and incentive compensation.  On or before November 17, 2022, you will submit for reimbursement in accordance with the Company's expense reimbursement policies and practices all unreimbursed business expenses incurred by you, so that the Company may promptly pay you.

3.      <u>Severance Payments.</u>  The Company will pay you severance benefits. Within five (5) business days of the Effective Date of this Agreement, as defined in Section 6(c), the Company will pay to you $20,000 (twenty thousand dollars) in a lump sum, less applicable taxes, garnishments and any other withholding required by law or authorized by you.

4.      <u>COBRA.</u>  If eligible, you will be given the opportunity to elect continuation of healthcare benefits at your own expense pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, or the applicable state equivalent (together, "<u>COBRA</u>").

5.     Acknowledgment of Your Continuing Obligations to the Company.  In conjunction with your employment by the Company, you executed the Employment Covenants Agreement attached as Exhibit A hereto (the "Covenants Agreement") and the Confidentiality and Assignment Proprietary Information and Inventions Agreement attached as Exhibit B hereto (the "Confidentiality Agreement").  You acknowledge and agree to comply with all continuing obligations under the Covenants Agreement and Confidentiality Agreement, including but not limited to your obligations with respect to Proprietary Information, Company Inventions, to return Company documents, and not to solicit or attempt to solicit any employee, consultant or independent contractor of the Company.  Notwithstanding the foregoing, or anything contained in the Covenants Agreement and Confidentiality Agreement, you acknowledge that you will not be held criminally or civilly liable for (a) the disclosure of confidential or proprietary information or trade secrets that is made in confidence to a government official or to an attorney solely for the purpose of reporting or investigating a suspected violation of law, or (b) disclosure of confidential or proprietary information or trade secrets in a made in a complaint or other document filed in a lawsuit or other proceeding under seal or pursuant to court order.

6.     General Release.  You agree not to sue, or otherwise file any claim against, the Company or any of its directors, officers, managers, employees or agents for any reason whatsoever based on anything that has occurred as of the date you sign this agreement.

   a.   On behalf of yourself and your executors, administrators, heirs and assigns, you hereby release and forever discharge the "Releasees" hereunder, consisting of the Company, and each of its owners, directors, officers, managers, employees, agents and insurers, and all persons acting by, through, under or in concert with them, or any of them, of and from any and all manner of action or actions, cause or causes of action, in law or in equity, suits, debts, liens, contracts, agreements, promises, liability, claims, demands, damages, loss, cost or expense, of any nature whatsoever, known or unknown, fixed or contingent (hereinafter called "Claims"), which you now have or may hereafter have against the Releasees, or any of them, by reason of any matter, cause, or thing whatsoever from the beginning of time to the date hereof, including, without limiting the generality of the foregoing, any Claims arising directly or indirectly out of, relating to, or in any other way involving in any manner whatsoever your employment by the Company or the separation thereof, including without limitation any and all claims arising under federal, state, or local laws relating to employment, claims of any kind that may be brought in any court or administrative agency, any claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., the Genetic Information Nondiscrimination Act of 2008, 42 U.S.C. § 2000ff et seq., the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. § 2101 et seq., the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., Executive Order 11246, Executive Order 11141, the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., all as amended; all claims arising out of the New York State Human Rights Law, N.Y. Executive Law § 290 et seq., the New York City Human Rights Law, New York City Charter and Administrative Code, Title VIII, § 8-107 et seq., the New York Civil Rights Law, N.Y. Civil Rights Law § 79-e et seq., and the New York Labor Law, N.Y. Labor Law § 1 et seq., all as amended; the laws of any other state governing labor and employment; Claims for breach of contract; all common law Claims; Claims arising in tort, including, without limitation, Claims of wrongful dismissal or discharge, discrimination, harassment, retaliation, fraud, misrepresentation, defamation, libel, infliction of emotional distress, violation of public policy, and/or breach of the implied covenant of good faith and fair dealing; and Claims for damages or other remedies of any sort, including, without

      limitation, compensatory damages, punitive damages, injunctive relief and attorney's fees actions in defamation, intentional infliction of emotional distress, misrepresentation, fraud, wrongful discharge, and breach of contract (including, without limitation, any retention agreement between you and the Company); all claims to any non-vested ownership interest in the Company, contractual or otherwise; and any claim or damage arising out of your employment with and/or separation from the Company (including a claim for retaliation) under any common law theory or any federal, state or local statute or ordinance not expressly referenced above; provided, however, that nothing in this letter agreement prevents you from (i) filing a charge with, cooperating with, or participating in any proceeding before the Equal Employment Opportunity Commission, the New York State Division of Human Rights Commission or the New York City Commission on Human Rights (except that you acknowledge that you may not recover any monetary benefits in connection with any such Claim, charge or proceeding), or (ii) communicating or cooperating with any government agency; and further provided that nothing herein requires you release (iii) your rights under this Agreement or (iv) any Claims that cannot be released as a matter of law.

  b.  You have been informed that, by statute or common law, a general release of claims may not extent to Claims that you do not know or suspect to exist in your favor at the time of executing the release, where such Claims, if known to you, may have materially affected your decision to settle. Being aware of such statutory or common laws principles, you nonetheless agree to waive your right to pursue such unknown Claims against the Releasees.

  c.  In accordance with the Older Workers Benefit Protection Act of 1990, you acknowledge that you are aware of the following:

(i) This paragraph, and this Agreement are written in a manner calculated to be understood by you.

(ii) The waiver and release of claims under the ADEA contained in this Agreement does not cover rights or claims that may arise after the date on which you sign this Agreement.

(iii) This Agreement provides for consideration in addition to anything of value to which you are already entitled.

(iv) You have been advised to consult an attorney before signing this Agreement.

(v) If you wish to revoke this Agreement, you must deliver a written notice stating that intent to revoke to Sheri Myers at Sheri@pulsedata.io.

(vi) You have the right to revoke this Agreement within seven (7) days of signing it. In the event this Agreement is revoked, it will be null and void in its entirety, and you will not receive the benefits of this Agreement.

If you wish to revoke this Agreement, you must deliver written notice stating that intent to revoke to [insert name/address/phone/fax number of person responsible for receipt of notice on behalf of the Company], on or before 5:00 p.m. on the seventh (7th) day after the date on which you sign this Agreement. The eighth day following your executive of this Agreement shall be the "<u>Effective Date</u>."

7.    <u>Requests for References.</u> All external requests for references should be directed to Sheri Myers, who will confirm only your job title and dates of employment.

8.    <u>Confidentiality of this Agreement.</u> The existence and terms of this Agreement are confidential. You shall not disclose its existence or terms to any person, other than members of your immediate family, your attorney, and your accountant or any government taxing authority.

.         Employee's Representations.  You represent and warrant that:

   a. You have returned to the Company all Company property in your possession;
   b. You are not owed wages, commissions, bonuses or other compensation, other than as set forth in this Agreement;
   c. During the course of your employment you did not sustain any injuries for which you might be entitled to compensation pursuant to worker's compensation law; and
   d. You have not initiated any adversarial proceedings of any kind against the Company or against any other person or entity released herein, nor will you do so in the future, except as specifically allowed by this Agreement.

10. Non-Disparagement.    You agree not to disparage or defame the Company, its directors, officers and employees, Company products or services, or any Releasee, publicly or privately, directly or indirectly through others, by use of any words, actions, gestures or medium, including but not limited to on social media or other internet site.  Nothing in this Section 10 shall prevent you from testifying truthfully in response to a subpoena or other legal process; nor shall anything herein prevent you from communicating directly with, cooperating with, or providing information to, any federal, state or local government regulator, including, but not limited to, the U.S. Securities and Exchange Commission, the U.S. Commodity Futures Trading Commission, or the U.S. Department of Justice.

11. Severability.  The provisions of this agreement are severable.  If any provision is held to be invalid or unenforceable, it shall not affect the validity or the enforceability of any other provision.  You represent that you have thoroughly read and considered all aspects of this agreement, that you understand all of its provisions, and that you are voluntarily entering into this agreement.

12. Governing Law and Attorneys' Fees.  This Agreement will in all respects be interpreted, enforced and governed under the laws of the State of New York, without regard to the conflicts of laws rules thereof.  If it is necessary for either party to file suit to enforce this Agreement, the prevailing party shall recover its reasonable costs of enforcement, including costs and reasonable attorneys' fees.

13. Integrated Agreement.  This Agreement, together with the Covenants Agreement and Confidentiality Agreement, sets forth the entire agreement between you and Company and supersedes and replaces any and all prior oral or written agreements or understandings between you and Company.  You represent that you have signed this Agreement voluntarily.

14. Amendment of this Agreement.  This agreement may not be altered, amended, or modified except by a further written document signed by you and an authorized representative of the Company.

15. Execution in Counterparts.  This Agreement may be executed in counterparts with the same force and effectiveness as though executed in a single document.  Electronic signatures shall have the same force and effectiveness as original signatures.

    If the above terms are agreeable to you, please date and sign the original of this letter in the place indicated below and return it to me on or before October 27, 2022.

*/s/ Shiv Myer*
_____

Sheri Myers
Director of People and Performance, pulseData Inc.

Accepted and agreed to on _____Jung Hoon Son_____

*Jung Hoon Son*
Jung Hoon Son (Nov 3, 2022 17:30 EDT)

Jung Hoon Son

# Separation Agreement - Jung (4) (1)

Final Audit Report  2022-11-03

| | |
|---|---|
| Created: | 2022-11-03 |
| By: | Sheri Myers (Sheri@pulsedata.io) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAcFvk1oXlmEwhYgyBfsWW6PlCoOYczq7r |

## "Separation Agreement - Jung (4) (1)" History

- Document created by Sheri Myers (Sheri@pulsedata.io)
  2022-11-03 - 9:25:35 PM GMT

- Document emailed to jung@pulsedata.io for signature
  2022-11-03 - 9:27:41 PM GMT

- Email viewed by jung@pulsedata.io
  2022-11-03 - 9:29:41 PM GMT

- Signer jung@pulsedata.io entered name at signing as Jung Hoon Son
  2022-11-03 - 9:30:34 PM GMT

- Document e-signed by Jung Hoon Son (jung@pulsedata.io)
  Signature Date: 2022-11-03 - 9:30:36 PM GMT - Time Source: server

- Agreement completed.
  2022-11-03 - 9:30:36 PM GMT

Adobe Acrobat Sign